# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**February 18, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

ESTATE OF:                          )
CONNIE S. BLIGH, Decedent,          )
                                    )
MICHAEL S. BLIGH, Executor,         )
                                    )
    Plaintiff/Appellant,          )    A p p e
                                    )    al No.
                                    )    M1999-02645-COA-R3-CV
VS.                                 )
                                    )    Davidson Probate
LURANA SNIDER,                      )    No. 95P-93
                                    )
    Defendant/Appellee.           )

### APPEALED FROM THE PROBATE COURT OF DAVIDSON COUNTY
### AT NASHVILLE, TENNESSEE

### THE HONORABLE FRANK G. CLEMENT, JUDGE

MICHAEL BRIEN BLIGH
392 Harding Place, Suite 215
Nashville, Tennessee 37211
    Attorney for Plaintiff/Appellant

PAUL R. WHITE
Suite 400, Washington Square
214 Second Avenue North
Nashville, Tennessee 37201
    Attorney for Defendant/Appellee

### AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
COTTRELL, J.

# **O P I N I O N**

This is an action by the executor of an estate to collect two loans made by the decedent to the defendant and to recover the funds represented by a certificate of deposit withdrawn by the defendant before the decedent's death. The Probate Court of Davidson County held that the loans had been repaid and that the certificate of deposit represented a gift to the defendant. We affirm.

## I.

The decedent, Connie Bligh, and Lurana Snider were friends. Ms. Bligh lived alone in a large house on West End Avenue in Nashville. Ms. Snider frequently visited Ms. Bligh to run errands for her and to take her on shopping trips. In 1986 and 1987 Ms. Bligh made two loans to Ms. Snider.

In 1990 Ms. Bligh deposited $60,000 in a Federal Savings and Loan Association, listing herself as the sole owner of the certificate. In 1991 she changed ownership of the certificate to read, "Mrs. C.L. Bligh or Mrs. Elmer E. Snider."

Ms. Bligh's health failed in the fall of 1993. On October 25, 1993 Ms. Snider, having possession of the certificate of deposit, withdrew the funds from the account. The court appointed a conservator for Ms. Bligh in January of 1994, and she died a year later.

Ms. Bligh's nephew, Michael S. Bligh, was appointed executor of her estate. In 1996 the executor sued Ms. Snider to collect the unpaid loans, and to recover the funds withdrawn from the certificate of deposit. Ms. Snider's answer asserted that the loans had been repaid and that the certificate of deposit represented a gift to her.

## II.

To prove the two loans the executor introduced the responses to two requests for admissions answered by Ms. Snider. The questions and answers are as follows:

> 3. Admit or deny that on December 17, 1986, the defendant Lurana Snider, received $15,000.00 from the decedent, Connie Bligh, as a loan.
>
> **RESPONSE**: Yes and paid back in full
>
> 4. Admit or deny that on September 5, 1987, the defendant, Lurana Snider, received $5,000.00 from the decedent, Connie Bligh, as a loan.
>
> **RESPONSE**: Yes and also paid back in full

The executor then closed his case in chief on the two loans. The court granted Ms. Snider's motion to dismiss at the close of the plaintiff's proof.

On appeal the executor contends that the admissions are conclusive and that without positive proof of repayment, they are sufficient to establish Ms. Snider's obligation to the estate. In essence he argues that the explanation does not come into evidence with the admission, because a party cannot admit facts that it has the burden of proving.

Rule 36, Tenn. R. Civ. Proc., allows a party to serve a request for admissions on the opposite party. The rule also places on the party served an obligation to admit or deny the request in a timely fashion, or the matter may be taken as admitted. Some answers, however, require qualification, and the rule takes that fact into account by providing "when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder." If the requesting party is not satisfied with the answers, it may move the court "to determine the sufficiency of the answers or objections."

We know of no authority allowing a party to select and use parts of a response to a request for admissions. If some part of the response is objectionable the rule allows the objecting party to ask the court to resolve the dispute. A leading treatise on the federal rules describes the procedure in this way: "The next step is left to the party serving the requests . . . If he wishes to challenge the sufficiency of the objections, or the sufficiency of the answers, he may move for such a determination." 4A *Moore's Federal Practice* § 36.06. Our Supreme Court adopted this procedure in a case involving the failure to answer a request for admissions. *See Tennessee Dept. of Human Services v. Barbee*, 714 S.W.2d 263 (Tenn. 1986).

We think the defendant was entitled under Rule 36 to explain her answer to the request. If the plaintiff wished to use the admission without the explanation, he should have sought an order from the court. There being no other proof in the record that the loans were still outstanding, the trial judge was justified in dismissing this part of the action.

## III.

The trial judge held that the decedent had made a gift of the certificate of deposit to Ms. Snider.

The executor is correct that Ms. Snider has the burden of proving the essentials of a gift: donative intent and delivery, *First National Bank v. Howard*, 302 S.W.2d 516 (Tenn. Ct. App. 1957). And the proof must be clear, cogent, and convincing, *Parsley v. Harlan*, 702 S.W.2d 166, 173 (Tenn. Ct. App. 1985).

The evidence showed that Ms. Bligh was a woman of some means, owning a large home on West End Avenue in Nashville where she rented rooms.

At one time she kept modest amounts of cash in her home. She used a large safe in her bedroom and a family member once gave her a smaller safe for Christmas.

Ms. Snider was described in the record as being like the daughter that Ms. Bligh never had. She visited Ms. Bligh often and took her on shopping trips and to doctor's appointments. When she had to be out of town, Ms. Snider would arrange for one of her friends to keep in touch with Ms. Bligh.

On January 17, 1991, Ms. Bligh transferred the ownership of the certificate of deposit from her sole name to "Mrs. C. L. Bligh or Ms. Elmer E. Snider." Later, after preparing a will, Ms. Bligh told a mutual friend that she had "already taken care of Ronnie (Ms. Snider)."

Donative intent may be established by showing the love and affection between the donor and donee. *McClure v. Stegall*, 729 S.W.2d 263, 266 (Tenn. Ct. App. 1987); *Simmons v. Foster*, 622 S.W.2d 838 (Tenn. Ct. App. 1981). Here, Ms. Bligh considered Ms. Snider as a daughter; they obviously had a close relationship for many years. We cannot say that the trial judge erred in concluding that the proof clearly established Ms. Bligh's donative intent.

Delivery is more of a problem because Ms. Bligh's name remained on the certificate of deposit. This question has been litigated frequently and has come to the attention of the legislature on several occasions. Most of the cases dealing with this question however are of little help because they deal with funds left on deposit at the death of one of the parties. Therefore, they help decide rights of survivorship rather than whether the donor made an inter-vivos gift. Also, the banking statutes are designed to protect the paying bank, not to change a basic and fundamental form of property ownership in bank deposits. *Griffin v. Prince*, 632 S.W.2d 532 (Tenn. 1982).

*Estate of Haynes v. Braden*, 835 S.W.2d 19 (Tenn. Ct. App. 1992) is one case where the court dealt with the effect of the funds in two accounts having been withdrawn before the death of the original depositor. The funds were in joint accounts with rights of survivorship. Shortly before the death of the depositor, the other party withdrew the funds. The court held that the chancellor erred in holding that the deceased did not relinquish control before his death. When the other party withdrew the funds, the gift was complete.

We should point out that in *Estate of Haynes* there was an agreement between the parties and the bank as follows:

> "We hereby apply for an account as joint tenants with rights of survivorship and not as tenants by the entirety in Security Trust Federal Savings and Loan and for the issuance of evidence thereof in their joint names described as aforesaid. You are directed to act pursuant to any one or more of the joint signatures, shown below, in any manner in connection with this account and, without limiting the generality of the foregoing, to pay, without any liability for such payment, to any one of the survivor or survivors at any time. *It is agreed by the signatory parties with each other* and by the parties with you *that any funds placed in or added to the account by any one of the parties* **are and shall be conclusively intended to be a gift and delivery at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in the account.** (Emphasis added.)"

There is no comparable provision in this case. But this language, as we see it, only supports a finding of donative intent. The agreement does say that any funds deposited by either party shall be "delivery" to the other party, but only "to the extent of his or their pro rata interest in the account." Each party retained the right to withdraw the funds at any time and each party retained the right of survivorship.

In our opinion the delivery in this case is more clearly established than it was in *Estate of Haynes*. Here, Ms. Snider was designated as a joint owner of the funds giving her the unfettered right to withdraw them. (*See* Tenn. Code Ann. § 45-2-703(a) below.) Although Ms. Bligh had the same right, there

is no indication in the record that she had a continuing interest in the funds by retaining the right of survivorship, as the donor did in *Estate of Haynes*. Ms. Snider held the certificate and Ms. Bligh stated that she had "taken care of Connie." Although the Dead Man's Statute, Tenn. Code Ann. § 24-1-203, prevented Ms. Snider from testifying that Ms. Bligh had given her the certificate, she did testify that she had never taken anything from Ms. Bligh's house without her permission.

We think the record clearly showed a delivery to Ms. Snider. The funds were in an account for which she had the right of withdrawal. She withdrew the funds. At that point, we think the burden shifted to the estate to show that the result was contrary to Ms. Bligh's wishes.

We do not think our statutes compel a different result. The relevant statute is Tenn. Code Ann. § 45-2-703. It provides in subsection (a):

> When a deposit has been made or shall hereafter be made, in any bank, in the names of two (2) or more persons, payable to either, or survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of such persons, whether the others be living or not; and the receipt or acquittance of such person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made. . . .

It also provides in subsections (c) and (e):

> (c) As used in subsection (c)-(f), "multiple-party deposit account" means a deposit account (including a certificate of deposit) established in the names of, payable to, or in form subject to withdrawal by two(2) or more natural persons or any of them, including, but not limited to, an account of the type described in subsection (a).
>
> . . .
>
> (e) Accounts described in subsection (c) shall establish the following interests:
>
> (1) A designation of "joint tenants with right of survivorship," or substantially similar language, shall be conclusive evidence in any action or proceeding of

the intentions of all named that title vests in the survivor;

(2) The designation of a person as "additional authorized signatory," or substantially similar language, shall be conclusive evidence in any action or proceeding that the person so designated has power of attorney with respect to such account and is not an owner of such account;

(3) Other designations acceptable to the bank shall establish interests in accordance with their respective provisions; and

(4) In the absence of any specific designation in accordance with subsection (d), property held under the title, tenancy by the entireties, carries a right of survivorship; property held under the title, joint tenancy, carries no right of survivorship unless a contrary intention is expressly stated. Any other person to whose order the accounts or certificate of deposit is subject shall be presumed to have power of attorney with respect thereto and not to be an owner thereof. Such presumptions may be rebutted by clear and convincing evidence presented in the course of legal or equitable proceedings. Final judicial determinations contrary to such presumptions shall not affect a bank's earlier payment in accordance therewith, or the limitations on liability conferred by the provisions of subsections (1) and (b) or § 45-2-707.

These sections add little to our discussion. No issue is raised about the bank's liability for paying the funds to Ms. Snider (subsection (a)); nor is there any contention that this account was anything but a "multiple-party deposit account" (subsection (c)). Ms. Snider was not, however, just an "additional authorized signatory" (subsection (e)(2)); she was designated as an owner of the account. Therefore, the presumption raised in subsection (e)(4) does not arise. If the presumption did arise, it would be rebutted by the same clear and convincing evidence necessary to establish the gift.

The judgment of the trial court is affirmed and the cause is remanded to the Probate Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to Michael S. Bligh, executor.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
PATRICIA J. COTTRELL, JUDGE